# 23-0644-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————

FREE HOLDINGS, INC.,

*Plaintiff-Appellant,*

— v. —

KEVIN MCCOY, SOTHEBY'S INC.,

*Defendants-Appellees,*

NAMELESS CORPORATION, ALEX AMSEL,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

WILLIAM L. CHARRON
ROBERT J. DEBRAUWERE
NICHOLAS SAADY
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, New York 10036
(212) 421-4100

THERESA M. HOUSE
MARCUS A. ASNER
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
(212) 836-8000

*Attorneys for Defendants-Appellees*

CP COUNSEL PRESS     (800) 4-APPEAL • (323394)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Sotheby's Inc. identifies its parent corporation(s) and any publicly held company that owns 10% or more of its stock as follows: Sotheby's, Inc. is a wholly owned subsidiary of Sotheby's, a publicly traded Delaware company. There are no publicly held corporations that own more than 10% of Sotheby's, Inc.'s stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE...............................................................3

    A.    Nature Of The Case And Of This Appeal ..............................................3

    B.    Disposition Below ...............................................................5

        1.    The District Court's Use Of Defined Terms In The Decision ..................................................................5

        2.    Appellant's Distortion Of The Defined Terms On This Appeal, And Its Improper Attempt To Make A New Argument That It Did Not Argue To The District Court...........7

        3.    The District Court's Dismissal Under Fed. R. Civ. P. 12(b)(1) ..................................................................9

        4.    The District Court's Dismissal Under Fed. R. Civ. P. 12(b)(6) .................................................................10

            a.    Dismissal Of Unjust Enrichment Claim .........................10

            b.    Dismissal Of Slander Of Title/Commercial Disparagement Claim ....................................................11

            c.    Dismissal Of N.Y. Gen. Bus. Law § 349 Claim ............12

            d.    Dismissal Of Lanham Act Section 43(a) False Advertising Claim.............................................................12

            e.    Dismissal Of Declaratory Judgment Claim....................12

STATEMENT OF FACTS ..................................................................13

    Appellant Admits That Every NFT Is Unique ..............................................13

    The Namecoin Protocol ..................................................................14

    McCoy's Creation Of The 2014 Namecoin NFT, And Appellant's Creation Of Its Own 2021 Namecoin NFT.......................16

i

The Allegedly "False And Misleading" Auction Marketing Statements .................................................................................21

Appellant Pleads No Special Damages ..........................................22

Procedural History ........................................................................23

SUMMARY OF THE ARGUMENT ....................................................23

JURISDICTIONAL STATEMENT .....................................................25

STATEMENT OF THE STANDARDS OF REVIEW ...........................26

ARGUMENT ......................................................................................26

I.    THE DISTRICT COURT CORRECTLY DISMISSED APPELLANT'S CLAIMS FOR LACK OF JUSTICIABILITY .................................................................26

    A.    Appellant Did Not Allege A Proprietary Interest In The *Quantum* Digital Artwork Itself ....................................26

    B.    The District Court Correctly Found That Appellant Lacks Any Proprietary Interest Sufficient To Confer Standing And Ripeness ...........................................30

        1.    The District Court Correctly Found That Appellant Lacks Standing ................................31

        2.    The District Court Correctly Found That Appellant's Claims Are Unripe ......................34

II.    THE DISTRICT COURT ALTERNATIVELY CORRECTLY DISMISSED APPELLANT'S CLAIMS UNDER RULE 12(B)(6) ....................................................36

    A.    The District Court Correctly Dismissed Appellant's Claim For Unjust Enrichment ...................................36

        1.    Appellant Did Not Viably Or Plausibly Allege That Appellees Sold Property At Appellant's Expense .............................................................37

        2.    Appellant Did Not Allege A Close Connection Between Itself And Appellees ........................39

        3.    Appellant Did Not Allege Facts Supporting An Offense To "Equity And Good Conscience" ................41

ii

B.      The District Court Correctly Dismissed Appellant's Claims For Slander Of Title And Commercial Disparagement ........................................................... 42

     1.      Appellant Did Not Viably Allege Falsity ....................... 43

     2.      Appellant Did Not Viably Allege Malice ....................... 46

     3.      Appellant Did Not Allege Special Damages ................. 47

C.      The District Court Correctly Dismissed Appellant's Claim Under N.Y. GBL § 349 .................................................. 49

D.      The District Court Correctly Dismissed Appellant's False Advertising Claim Under Section 43(a) Of The Lanham Act .................................................................... 52

     1.      Appellant Failed To Allege Falsity ................................ 53

     2.      Appellant Failed To Allege Diversion Of Business Or Loss Of Goodwill .................................. 55

E.      The District Court Correctly Denied Appellant's Request For A Declaratory Judgment ....................................... 56

CONCLUSION ....................................................................... 57

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) ............................................................ 50, 51

*AARP v. 200 Kelsey Assocs., LLC*,
    No. 06-CV-81 (SCR), 2009 WL 47499 (S.D.N.Y. Jan. 8, 2009) .......................56

*Angio-Med. Corp. v. Eli Lilly & Co.*,
    720 F. Supp. 269 (S.D.N.Y. 1989) ...............................................................48

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................38

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................38

*Bilinski v. Keith Haring Found., Inc.*,
    632 F. App'x 637 (2d Cir. 2015) ..................................................................48

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ...........................................................................30

*Chamila, LLC v. Pandora Jewelry, LLC*,
    No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) ..........47

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l.*,
    790 F.3d 411 (2d Cir. 2015) ..................................................................... 26, 31

*Davis v. Avvo, Inc.*,
    345 F. Supp. 3d 534 (S.D.N.Y. 2018) ...........................................................54

*De Sole v. Knoedler Gallery LLC*,
    139 F. Supp. 3d 618 (S.D.N.Y. 2015) ...........................................................49

*Desir v. Florida Cap. Bank*, N.A.,
    377 F. Supp. 3d 168 (E.D.N.Y. 2019) ...........................................................36

*Dillon v. City of N.Y.*,
    261 A.D.2d  34 (1st Dep't 1999) ..................................................................44

*DO Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009) ...........................................................50

iv

*Doe v. Quest Diagnostics, Inc.*,
  No. 15 CIV. 8992 (LGS), 2017 WL 1102663
  (S.D.N.Y. Mar. 23, 2017) .............................................................................. 33-34

*Doyle v. Allstate Ins. Co.*,
  1 N.Y.2d 439 (1956) ...................................................................................48

*Fink v. Shawangunk Conservancy, Inc.*,
  15 A.D.3d 754 (3d Dep't 2005)...................................................................47

*Fitzgerald v. Thompson*,
  353 F. App'x 532 (2d Cir. 2009) .................................................................31

*Genesco Ent., Div. of Lymutt Indus. v. Koch*,
  593 F. Supp. 743 (S.D.N.Y. 1984) ..............................................................50

*Genesee Brewing Co. v. Vill. of Sodus Point*, N.Y.,
  733 F.2d 258 (2d Cir. 1984) .......................................................................36

*Georgia Malone & Co. v. Rieder*,
  19 N.Y.3d 511 (2012) ............................................................................ 37, 39

*Green v. Cap. One, N.A*,
  557 F. Supp. 3d 441 (S.D.N.Y. 2021) ..................................................... 51-52

*Green v. Dep't of Educ. of City of N.Y.*,
  16 F.4th 1070 (2d Cir. 2021) .....................................................................30

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003) .........................................................50

*Herstand Co. v. Gallery*,
  211 A.D.2d 77 (1st Dep't 1995) .................................................................13

*John Grace & Co. v. Todd Assocs., Inc.*,
  188 A.D.2d 585 (2d Dep't 1992).................................................................42

*Johnson & Johnson * Merck Consumer Pharms. Co. v.
  Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992) ......................................................................54

*Karlin v. IVF Am., Inc.*,
  93 N.Y.2d 282 (1999) .................................................................................50

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992) ...........................................................48

*Koch v. Greenberg*,
   14 F. Supp. 3d 247, 253 (S.D.N.Y. 2014),
   *aff'd*, 626 F. App'x 335 (2d Cir. 2015)........................................ 50, 51

*Koch v. Greenberg*,
   No. 07 CIV.9600 (BSJ)(DF), 2008 WL 4778813
   (S.D.N.Y. Oct. 31, 2008) ........................................................... 50, 51

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   306 F. Supp. 3d 629 (S.D.N.Y. 2018) ...................................................54

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).......................................................................... 30-31

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ...................................................................... 39, 41

*Mobius Mgmt. Sys. Inc. v. Fourth Dimension Software, Inc.*,
   880 F. Supp. 1005 (S.D.N.Y. 1994) ....................................................55

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
   759 F.2d 219 (2d Cir. 1985) ............................................................ 45, 46

*North Am. Olive Oil Ass'n v. D'Avolio Inc.*,
   457 F. Supp. 3d 207 (E.D.N.Y. 2020) ............................................ 42, 50

*Penn Warranty Corp. v. DiGiovanni*,
   810 N.Y.S.2d 807 (Sup. Ct. N.Y. Cnty. 2005)............................... 42, 44

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
   No. 14CV6294-LTS-HBP, 2015 WL 5008762
   (S.D.N.Y. Aug. 24, 2015)...................................................................50

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014) .................................................44

*Rosenbaum v. City of N.Y.*,
   8 N.Y.3d 1 (2006) .............................................................................42

*Roth v. CitiMortgage Inc.*,
   756 F.3d 178 (2d Cir. 2014) ........................................................ 26, 30

*Sioson v. Knights of Columbus*,
   303 F.3d 458 (2d Cir. 2002) ..............................................................1

*SM Kids, LLC v. Google LLC*,
   963 F.3d 206 (2d Cir. 2020) .............................................................46

*Steinhilber v. Alphonse*,
 68 N.Y.2d 283 (1986) ................................................................. 45, 46

*Teller v. Bill Hayes, Ltd.*,
 213 A.D.2d 141 (2d Dep't 1995) ........................................................50

*Torain v. Liu*,
 279 F. App'x 46 (2d Cir. 2008) ........................................................44

*United States v. Wasylyshyn*,
 979 F.3d 165 (2d Cir. 2020) ..........................................................29

*Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*,
 301 F. Supp. 3d 381 (D. Conn. 2018) ..................................................33

*Wei Su & Hai Wang v. Sotheby's, Inc.*,
 No. 17-CV-4577 (VEC), 2019 WL 4917609
 (S.D.N.Y. Oct. 4, 2019) ...............................................................42

**Statutes & Other Authorities:**

U.S. Const. Art. III ................................................................ 9, 25, 30

15 U.S.C. § 45 .........................................................................49

15 U.S.C. § 1125(a) ............................................................. 5, 12, 52

28 U.S.C. § 1291 ......................................................................25

28 U.S.C. § 1332(a) ...................................................................25

Fed. R. App. P. 3(a)(2) ......................................................... 2, 25, 57

Fed. R. App. P. 28 ....................................................................1

Fed. R. App. P. 28(a) ........................................................... 2, 25, 57

Fed. R. App. P. 28(a)(4) ...............................................................1

Fed. R. App. P. 28(a)(5) ...............................................................1

Fed. R. App. P. 28(a)(6) ...............................................................1

Fed. R. App. P. 28(a)(7) ...............................................................1

Fed. R. Civ. P. 11(b)(3) ..............................................................38

Fed. R. Civ. P. 12 ................................................................ 14, 51

Fed. R. Civ. P. 12(b)(1)......................................................*passim*

Fed. R. Civ. P. 12(b)(6)......................................................*passim*

N.Y. Gen. Bus. Law § 249.......................................................5

N.Y. Gen. Bus. Law § 349......................................................*passim*

*Black's Law Dictionary* (10th ed. 2014)......................................32

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>[1]

1.     Did the District Court correctly find that Appellant Free Holdings, Inc. ("Appellant") lacked standing to sue Appellees Kevin McCoy ("McCoy") and Sotheby's Inc. ("Sotheby's"; collectively with McCoy, "Appellees") for selling a non-fungible token ("NFT") that McCoy created on a blockchain known as Ethereum to indelibly confirm the provenance of an original work of digital art he created entitled *Quantum*, where Appellant's sole alleged basis to sue was its claimed ownership of an admittedly different NFT that it created by copying (*i.e.*, forging) most of McCoy's original NFT content on a different blockchain known as Namecoin?

Answer: Yes.

2.     Did the District Court correctly find that Appellant's claims lacked ripeness where Appellant failed to allege "any actual, imminent or attempted sale of [its claimed] NFT," or that Appellant "even tried to market it …"?

Answer: Yes.

---

[1] Appellees do not offer a "Counterstatement" of the issues presented for review because Appellant did not offer any statement of the issues presented for review, in violation of Fed. R. App. P. 28(a)(5). Nor did Appellant offer a required jurisdictional statement, or concise statement of the case or summary of the argument (assuming Appellant's "Introduction" was intended to satisfy one of those requirements). Fed. R. App. P. 28(a)(4), (6), (7). *See, e.g.*, *Sioson v. Knights of Columbus*, 303 F.3d 458, 459-60 (2d Cir. 2002) (per curiam) (non-compliance with mandatory requirements of FRAP 28 warrants dismissal of appeal).

1

3.      Did the District Court correctly find that Appellant failed to state any legally viable claims for relief where:  (a) Appellant failed to viably allege that it holds any proprietary interest in the NFT that Appellees sold; and (b) in the face of conclusive documentary evidence and facts that were integral to or incorporated into Appellant's pleading by reference, of which the District Court could take judicial notice, Appellant failed to viably allege that Appellees made any false, deceptive or malicious statements of fact in connection with their sale of McCoy's Ethereum NFT?

Answer:  Yes.

4.      Should this appeal otherwise be dismissed where Appellant raises a new theory of relief to try to save its claims, which Appellant did not allege in its pleading or argue to the District Court?

Answer:  Yes.

5.      Should Appellant's request for leave to amend be denied where Appellant sought no such leave from the District Court?

Answer:  Yes.

6.      Should this appeal be dismissed under Fed. R. App. P. 3(a)(2) for Appellant's non-compliance with the requirements of Fed. R. App. P. 28(a)?

Answer:  Yes.

## STATEMENT OF THE CASE

### A.   Nature Of The Case And Of This Appeal

This case concerns distinct pieces of property: non-fungible tokens ("NFTs"). Appellant claims that Appellees' marketing and sale of a NFT that McCoy owned and auctioned through Sotheby's in 2021 — which Appellant concedes it has never owned — somehow harmed the sale value of an entirely separate NFT that Appellant does claim to own, but has never tried to sell.

In concluding that Appellant lacked standing, that its claims lacked ripeness, and that none of its claims was viably stated, the District Court methodically found that Appellant failed to plead any "proprietary interest" in McCoy's NFT. (*E.g.*, Joint Appendix ("JA") 393-94.)  The District Court correctly found that Appellant owns an admittedly "different NFT[]" that it minted, which merely "copied verbatim" portions of McCoy's work, and that Appellant failed to allege that it suffered any actual or imminent injury. (*Id.*; JA-45 at ¶ 7; App. ECF No. 41 ("App. Br.") at 8.)

McCoy is a pioneer in digital fine art.  In 2014, he used a NFT on a blockchain known as Namecoin (the "2014 Namecoin NFT") to indelibly record ownership and provenance of another asset:  his original digital artwork, entitled *Quantum*. McCoy's use of a blockchain token in this manner was novel and is commonly understood to have been the "first NFT ever created." (JA-49 at ¶ 37.)

3

Appellant (a Canadian company owned by an anonymous person who goes by the social media handle, "@EarlyNFT") admits it had nothing to do with McCoy's creation of his 2014 Namecoin NFT, or his digital artwork (*Quantum*) that is the object of the 2014 Namecoin NFT's provenance record. Appellant also admits it has no interest in the NFT that McCoy later minted on a different and more modern blockchain, known as Ethereum, to record the provenance of *Quantum* (the "Ethereum NFT"), using the same data that McCoy had conceived with his 2014 Namecoin NFT. (JA-45 at ¶ 7.)

Instead, Appellant minted and recorded its own, "NEW" NFT on the Namecoin blockchain in 2021 (the "2021 Namecoin NFT"), copying the same value field data that McCoy had conceived in his 2014 Namecoin NFT, and using similar naming data that McCoy had used for his 2014 Namecoin NFT. (JA-49 at n.3; JA-50 at ¶ 42; JA-375-76 & n.3.) Appellant alleged that its use of the Namecoin name that it attached to its copied but admittedly "different" NFT gave it ownership of McCoy's 2014 Namecoin NFT as well.

The District Court correctly found that Appellant sought nothing more than to take advantage of the nascency of the NFT market to manufacture baseless and legally flawed claims. In the apt words of the District Court:

> [Appellant] has demonstrated nothing more than an attempt to exploit open questions of ownership in the still-developing NFT field to lay claim to the profits of a legitimate artist and creator [McCoy]. (JA-399.)

4

Appellant is effectively no more than a NFT forger that is trying to pass off a concededly different NFT as the "first-ever NFT" that McCoy created. It is ironic that Appellant seeks sympathy, bemoaning that it thinks the District Court viewed it as a "bad actor." (App. Br. at 4.)

Appellant apparently now would go further and pass off its ownership of the 2021 Namecoin NFT as effecting ownership of the *Quantum* artwork as well. As discussed below, this new theory was never alleged in Appellant's complaint or argued to the District Court, and it is contradicted by Appellant's own previous admissions.

## B.    <u>Disposition Below</u>

The District Court dismissed this case on alternative grounds: it dismissed all of Appellant's claims for lack of standing and ripeness under Fed. R. Civ. P. 12(b)(1); and it alternatively dismissed each of Appellant's claims — including unjust enrichment, slander of title/commercial disparagement, New York Gen. Bus. Law § 249, false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and declaratory judgment – pursuant to Fed. R. Civ. P. 12(b)(6). These dismissals are further summarized below.

### 1.    <u>The District Court's Use Of Defined Terms In The Decision</u>

The defined terms used in the District Court's Decision are important to understanding what the District Court decided.

5

At Appellant's suggestion, the District Court referred collectively at times to the 2014 Namecoin NFT minted by McCoy, and the 2021 Namecoin NFT minted by Appellant, as "Namecoin-*Quantum*." (JA-391 at n.12.) The District Court referred to the Ethereum NFT minted by McCoy as "Ethereum-*Quantum*," which it found (and which Appellant had specifically pleaded) was "'another NFT' to record the same moving image of *Quantum*, 'this time on the Ethereum blockchain.'" (JA-376, JA-391 at n.12; JA-45 at ¶¶ 6-7 ("On May 28, 2021, McCoy minted another NFT, also called *Quantum*, this time on the Ethereum blockchain (the 'Ethereum-*Quantum*'). Although both NFTs refer to the same visual image, the Ethereum-*Quantum* and the Namecoin-*Quantum* are different NFTs.").)

The District Court explained, based on the allegations in Appellant's pleading, that both "Namecoin-*Quantum*" and "Ethereum-*Quantum*" referred to "two NFTs called *Quantum*, ...." (JA-391 at n.12.) The District Court defined "the digital record of *Quantum* on Namecoin [*i.e.*, the namespace record of both the 2014 Namecoin NFT and the 2021 Namecoin NFT]" as the "-709a Record Page." (JA-375.) Elsewhere in the Decision, the District Court noted that "*Quantum*" is also the name of the actual digital artwork viewable at a mccoyspace.com ".gif" file, which is the object of provenance recording by all of the NFTs at issue. (*Id.*)

2. **Appellant's Distortion Of The Defined Terms On This Appeal, And Its Improper Attempt To Make A New Argument That It Did Not Argue To The District Court**

Appellant has raised a new case theory on this appeal that is premised on its distortion of the defined terms used in the Decision.

Appellant's allegations and argument to the District Court revolved around its theory that Appellant became the owner of McCoy's 2014 Namecoin NFT (the "first-ever NFT") by creating an entirely new NFT (*i.e.,* the 2021 Namecoin NFT), seven years later, which copied the value field data from McCoy's 2014 Namecoin NFT, and which attached the same name that McCoy had used in connection with his 2014 Namecoin NFT.  (JA-50 at ¶¶ 41-42.)  Appellant's theory was that the value of its 2021 Namecoin NFT had been diluted by Appellees' sale of McCoy's Ethereum NFT because Appellees stated, in connection with that sale, that the 2014 Namecoin NFT had been "burned," and that McCoy had "moved" his "original on-chain data" from his 2014 Namecoin NFT to his Ethereum NFT.  (JA-54-55 at ¶¶ 62, 66-67.)

Appellant's case thus focused on alleged harm to the 2021 Namecoin NFT that it minted to mimic the 2014 Namecoin NFT.  Appellant did *not* allege or argue that it was the owner of the *Quantum* artwork itself, and that *Quantum* had allegedly been stolen from it and sold without its consent, as Appellant now, for the first time, asserts.  (App. Br. at 32, 34, 37.)  To the contrary, in its initial pleading, Appellant

specifically distinguished between *Quantum* and the various NFT blockchain records of *Quantum*, alleging:

> The Quantum blockchain record [*i.e.*, the 2014 Namecoin NFT] was the first known blockchain record to explicitly link to an *external work of art* (namely the quantum .gif file hosted on mccoyspace.com), which definitionally means that the Quantum blockchain record [*i.e.*, the 2014 Namecoin NFT] is presumably the first known NFT.

(JA-17 at ¶ 20 (emphasis supplied).) Appellant later reworded this allegation in its amended pleading to allege more generally, although consistently: "The content linked to NFTs can take the form of digital images of physical objects, music, text, and more." (JA-48 at ¶ 32.) Appellant further alleges that "the item Sotheby's auctioned was in fact an *authorized* print of the Namecoin-*Quantum* token," which both confirms that Appellant's claims concern the Ethereum NFT (not the *Quantum* artwork itself), and that Appellant acknowledges having no proprietary interest in the Ethereum NFT that was auctioned, which Appellant describes as "authorized." (JA-57 at ¶ 79 (emphasis supplied).)

Appellant now pretends that it alleged and asserted ownership of the *Quantum* artwork itself. (App. Br. at 29 n.4, 34 n.5.) Appellant made no such allegation or argument to the District Court — as discussed above, Appellant pleaded the opposite.

Ignoring its pleadings, however, and distorting the defined terms used in the Decision that Appellant itself had suggested — and in particular on the District Court's adoption of the shorthand, "*Quantum*" to define each of the various NFTs at

8

issue (JA-391 at n.12) — Appellant now pretends as if it argued to the District Court that it owns the *Quantum* artwork itself. Appellant even demeans the District Court as "biased" for not addressing such a theory, and for "appear[ing] to punish" Appellant by addressing Appellant's argument about an alleged injury to *its NFT*. (App. Br. at 29 n.4) Such attacks on the District Court are unworthy. The District Court did not 'miss' an allegation and argument by Appellant that it supposedly owns *Quantum*; Appellant has inappropriately transmogrified its theory to assert such ownership for the first time on this appeal.[2]

### 3. The District Court's Dismissal Under Fed. R. Civ. P. 12(b)(1)

The District Court dismissed Appellant's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and specifically for lack of Article III justiciability. (JA-390-96.)

The District Court found that Appellant lacked standing because it did not plausibly allege any proprietary interest in the Ethereum NFT, which is what Appellees sold (along with the *Quantum* artwork). (JA-393-94.) Appellant's alleged proprietary interest is limited to the 2021 Namecoin NFT that it

---

[2] Appellant also advances for the first time on appeal the (fictitious) narrative that McCoy had created the Ethereum NFT because he supposedly belatedly realized his 2014 Namecoin NFT had not been burned. (App. Br. at 3.) This is not pleaded in Appellant's initial Complaint or its Amended Complaint. (*See generally* JA-13-31; JA-44-68.) Nor is Appellant's new narrative legally meaningful to the issues presented.

independently minted, which Appellant admitted is "different" from the Ethereum NFT.  (*Id.*)

The District Court similarly found that Appellant's claims were not ripe because Appellant alleged no actual, concrete or imminent injury-in-fact.  (JA-394-96.)  Appellant had never marketed or attempted to sell its 2021 Namecoin NFT, and the District Court concluded that Appellant's allegations of any purported harm to its value were factually unsupported, entirely speculative, or impermissibly manufactured by Appellant.  (JA-395-96.)

### 4.  The District Court's Dismissal Under Fed. R. Civ. P. 12(b)(6)

The District Court alternatively dismissed Appellant's claims under Fed. R. Civ. P. 12(b)(6).

### a.  Dismissal Of Unjust Enrichment Claim

The District Court dismissed Appellant's claim for unjust enrichment because: (i) Appellant alleged no "proprietary interest in the NFT that McCoy and Sotheby's sold" (JA-398); (ii) Appellant had no "connection" with McCoy and Sotheby's, other than unsolicited and unanswered, anonymous "tweets," an unanswered email and a single phone call (JA-398-99); and (iii) it was not "'against equity and good conscience' to allow 'McCoy and Sotheby's to retain the profits they obtained through the sale of the Ethereum-*Quantum* [*i.e.*, the Ethereum NFT]."  (JA-399.)

### b. Dismissal Of Slander Of Title/ Commercial Disparagement Claim

The District Court dismissed Appellant's claims for slander of title and commercial disparagement because Appellant alleged no "falsity" in any of Appellees' statements accompanying their sale of the Ethereum NFT — which can be shown either because the statements are "substantially true" or are not statements of fact at all, but rather expressions of opinion. (JA-400-04.)

In particular, the District Court found, on the basis of Appellant's own admissions and evidence, that (1) the terms "burned" and "expired" are vague and ambiguous terms that are used interchangeably (JA-401-02); and (2) Appellees themselves never actually marketed the Ethereum NFT as "the first NFT ever created" or claimed that the 2014 Namecoin NFT "did not exist," but rather had specifically explained, truthfully and "multiple times," that McCoy re-minted the Ethereum NFT using his data from his 2014 Namecoin NFT. (JA-403-04.)

The District Court also found there could be no "inference of malice" in Appellees' marketing statements because, accepting the truth of the evidence that Appellant submitted with its pleading, "reasonable minds" credit Appellees' statements as fair and accurate. (JA-405.) The District Court additionally found that Appellant alleged no "special damages" because it alleged no specific lost sales opportunities for its 2021 Namecoin NFT. (JA-405-06.)

11

### c.    Dismissal Of N.Y. Gen. Bus. Law § 349 Claim

The District Court dismissed Appellant's claim for deceptive trade practices under New York General Business Law § 349 because Appellant alleged nothing more than a "single-shot" art and collectibles transaction between wealthy and sophisticated parties that did not harm the public interest at large.  (JA-406-08.)  The District Court found that "the 'gravamen' of [Appellant's] amended complaint is plainly the alleged harm to its business, not to the public."  (JA-408.)

### d.    Dismissal Of Lanham Act
### Section 43(a) False Advertising Claim

The District Court dismissed Appellant's false advertising claim asserted under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), finding on the basis of evidence submitted by Appellant that it was not false to say the 2014 Namecoin NFT was the "first-ever" NFT and that it was "burned" on the Namecoin blockchain.  (JA-409-10.)  The District Court also found that Appellant alleged no loss of goodwill because Appellant had no "business or goodwill in *Quantum* in the first place."  (JA-410.)

### e.    Dismissal Of Declaratory Judgment Claim

On the basis of its findings, the District Court also dismissed Appellant's request that it be declared the owner of the 2014 Namecoin NFT.  (JA-410-11.)

## STATEMENT OF FACTS

### Appellant Admits That Every NFT Is Unique

NFTs are entries (tokens) on a digital public ledger (the blockchain) that evidence the ownership (and, thus, potential authenticity) of other assets, such as digital art.[3]

As Appellant alleges, "NFTs are tokens that authenticate digital content via blockchain technology." (JA-48 at ¶ 29.) Appellant alleges that a "blockchain is a digital public ledger maintained on a decentralized computer system and consisting of records called blocks." (JA-48 at ¶ 27.) "The [digital] content linked to NFTs can take the form of digital images of physical objects, music, text, and more." (JA-48 at ¶ 32.)

Appellant alleges that NFTs "are valued for their ability to maintain secure and decentralized records of transactions." (JA-48 at ¶ 28.) That is because, as Appellant alleges, "no two NFTs are the same." (JA-48 at ¶ 30.) "Whereas cryptocurrencies are fungible," the uniqueness and "non-fungible nature of NFTs," combined with the "blockchain's record-keeping and authentication technology,"

---

[3] Proof of an artwork's provenance can constitute compelling evidence of that artwork's authenticity. *E.g.*, *Herstand Co. v. Gallery*, 211 A.D.2d 77, 79-80 (1st Dep't 1995) ("[P]rovenance — i.e., the source and subsequent custodial history of an art work — is a weighty consideration in the process of authentication") (citations omitted).

make NFTs valuable, both as unique assets in and of themselves, and also as tools to verify the ownership of other assets such as digital art.  (JA-48 at ¶¶ 30, 31, 33.)[4]

**The Namecoin Protocol**

Namecoin is a digital public ledger (*i.e.*, blockchain) that can be used to record NFTs.  Namecoin's terms of use (referred to as its "FAQ"), which are integral to Appellant's pleading and thus properly considered at the Rule 12 stage, state that Namecoin "is used to register names and store associated values in the blockchain." (JA-184; *see also* JA-375 at n.2 ("The Court deems these exhibits to be incorporated by reference in, or otherwise integral to, the amended complaint, and therefore properly considered here.  [Citation omitted].").)

In other words, users of Namecoin can "store associated values" in NFTs on the blockchain, and can register those NFTs through registered names.

Namecoin describes "names" as "arbitrary binary blobs" that are created by users.  (JA-188.)  The Namecoin FAQ distinguishes between "names" and tokens, referred to as "special coins" measured in Namecoin values of "NMC":  "*Names* and values are *attached to* special *coins* with a value of 0.01 NMC."  (*Id.* (emphases

---

[4] In its initial Complaint, Appellant more comprehensively alleged that "each NFT is unique" and is "sequential[ly]" distinct from every other NFT within a blockchain. (JA-13 at ¶ 1; JA-16 at ¶ 15.)

supplied).) "Names" are not "coins" (tokens); names are "transaction outputs" that attach to tokens. (JA-192.)

Namecoin "names" that are not continually used by one person may be re-registered and used by subsequent users, who may attach them to their *own* NFTs. (JA-185, JA-188.) Appellant alleges that Namecoin "requires a user who controls a Namecoin record [*i.e.*, name] to periodically update the record [name] every 35,999 blocks" or "approximately 200-250 days." (JA-50 at ¶ 39.) Appellant then alleges that, "[i]f a user fails to update their record [name]," then "control of that particular block record expires and can be claimed by another user." (JA-50 at ¶ 40.)

That is not what Namecoin actually says. Namecoin does not state that so-called "block records" (which is a term invented by Appellant) can expire and be claimed by others. Namecoin states that "*registered names*" chosen by users can expire and be claimed by others in connection with their own tokens if those *names* are not periodically renewed or updated; but Namecoin does not state that the tokens, or "coins," attached to those names by others can also be claimed by new users of the name.

Namecoin states:

*Registered names* semi-expire if they are not renewed or updated for 31,968 blocks (approximately 222 days). If your *name* is semi-expired, it will stop resolving for your users until you renew or update it, but you are still the sole owner of *the name*. Semi-expired *names that are*

> *not renewed or updated* for an additional 4,032 blocks (approximately 28 days) will expire. *Expired names* can be re-registered by anyone.

(JA-185 (emphases supplied).) Namecoin also states that encrypted private keys are needed "to transfer namecoins" themselves from their wallet addresses where they are stored. (JA-184-85.)

Appellant does not allege that it possesses the encrypted private key needed to transfer the 2014 Namecoin NFT (because McCoy possesses it). Indeed, if Appellant did possess such a key, then it would not have needed to create its own NFT and to copy (forge) McCoy's original content into that token. *See also* Rhea Myers, https://rhea.art/regarding-quantum (cited at JA-311 n.2, and explaining that, "[i]n order to successfully create such a transaction, you must be able to sign it with the private cryptographic key for the nameCoin address … Any recreation of the same name and metadata key/value pair on NameCoin will *not* be the same special coin … It will therefore not be the same blockchain entry referred to by the text of Quantum.").

## McCoy's Creation Of The 2014 Namecoin NFT, And Appellant's Creation Of Its Own 2021 Namecoin NFT

Appellant alleges that McCoy "minted" his 2014 Namecoin NFT to evidence the provenance and authenticity of his digital art, *Quantum*. (JA-44 at ¶ 2; JA-49 at ¶¶ 36-37; *accord* JA-17 at ¶ 20.)

16

Appellant alleges that "McCoy failed to update the Namecoin-*Quantum* record [name] on the Namecoin blockchain" in January 2015, "rendering the record [name] free to claim." (JA-50 at ¶ 41.) Appellant alleges that it "claimed the Namecoin-*Quantum* record [name] on the Namecoin blockchain" on or around April 5, 2021. (JA-50 at ¶ 42.)

Appellant then alleges that "title to the Namecoin-*Quantum* NFT [*i.e.*, the 2014 Namecoin NFT] is currently held by Free Holdings" simply by virtue of Appellant's subsequent use of a Namecoin name. (JA-50 at ¶ 43.) This conclusory allegation is contradicted by Appellant's own allegations and evidence it submitted to the District Court. In reality, based on Appellant's own admissions, Appellant created a new, and distinct, NFT in 2021 — and when re-registering the "name" associated with it, forged the content of the 2014 Namecoin NFT.

This is conclusively evidenced by a historical report of the namespace associated with the 2014 Namecoin NFT and the 2021 Namecoin NFT (the "Namespace Report"), which Appellant explicitly references and relies upon in its pleading and which the District Court thus appropriately considered in detail. (JA-49 at ¶ 38 n.3; JA-218-220; JA-375 & n.3 – JA-378.)

Namespaces are simply "name prefixes." (JA-187.) The Namespace Report recites all "Name operations" associated with the name that McCoy first registered

17

to attach to his 2014 Namecoin NFT, and that Appellant re-registered to attach to its 2021 Namecoin NFT.  (JA-218-20.)

Specifically, the name operations began on May 2, 2014, at 11:33 p.m.  (*Id.*) That is when McCoy registered the name that he would use in association with the 2014 Namecoin NFT, indicated by the "Operation" description:  "NAME_NEW" with a unique "Value" description.  (*Id.*; *accord* JA-49 at ¶ 36.)  The next day, May 3, 2014, at 1:27 a.m., McCoy performed his "NAME_FIRSTUPDATE" operation, which was the first update to that namespace and which added McCoy's unique data that created the 2014 Namecoin NFT.  (JA-218-20.)

The next namespace transaction occurred seven years later, on April 5, 2021, at 7 a.m.  (JA-218-20.)  That is when Appellant allegedly used the same name and created a *new* NFT (the 2021 Namecoin NFT), indicated by the operation description: "NAME_NEW," with a *different* "Value" description.  (*Id.*; *accord* JA-50 at ¶ 42.) Later that same day, at 12:14 p.m., Appellant performed its own "NAME_FIRSTUPDATE" operation to its "NEW" NFT, in which Appellant performed its own *first* update to *that* NFT.  (JA-218-20; *see also* JA-48 at ¶ 30 ("no two NFTs are the same.").)  Appellant then proceeded to perform multiple, further "NAME_UPDATE" operations to its "NEW" NFT on April 30, 2021, June 7, 2021,

June 14, 2021, and February 10, 2022 – with each entry processed in a new and sequentially higher block number. (JA-218-20; JA-377.)[5]

In particular, on April 30, 2022, Appellant admits it "copied verbatim" the "Value" field metadata from McCoy's 2014 Namecoin NFT into Appellant's 2021 Namecoin NFT. (*Id.*; App. Br. at 8.)[6]

The Namespace Report is conclusive that the 2021 Namecoin NFT copies certain content of, but is nonetheless distinct from, the 2014 Namecoin NFT — which accords with Appellant's admission that "no two NFTs are the same." (ECF No. 47 at ¶ 30 (underscoring supplied); *accord id.* at ¶ 7 (admitting that Namecoin NFTs and Ethereum NFT "are different NFTs") (underscoring supplied).)

Indeed, the 2021 Namecoin NFT appears in an entirely different "block" of the blockchain than the 2014 Namecoin NFT, with a different and unique transaction identification number, and a unique date of creation and corresponding time stamp. (JA-218.) In its initial Complaint, Appellant acknowledged that such unique data is

---

[5] In its initial Complaint, Appellant alleged that blocks are "sequential records." (JA-16 at ¶ 15.) In its Amended Complaint, Appellant deleted the term "sequential" from this allegation, but the fact nonetheless remains. (JA-48 at ¶¶ 27-28.)

[6] That value field data states: "I assert title to the file at the URL http://staticmccoyspace.com/gifs/quantum.gif with the creator's public announcement of it's publishing at the URL https://twitter.com/mccoyspace/status/462320426719641600[.] The file whose SHA256 hash is d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a [the '-709a File'] is taken to be the file in question. Title transfers to whoever controls this blockchain entry." (JA-49 at ¶ 38.)

"self-evident" from a public search of the 2014 Namecoin NFT record in the Namecoin ledger. (JA-13-14 at ¶ 1; *see also* JA-375 at n.3 ("The Court considers the -709a Record Page in adjudicating the pending motions, as Free Holdings refers to it in the amended complaint and 'relied upon [it] in framing the complaint.'") (citation omitted).)

Thus, Appellant's use of a registered name that attaches to both its 2021 Namecoin NFT and McCoy's 2014 Namecoin NFT does not mean that Appellant owns McCoy's 2014 Namecoin NFT as well as its own. Critically, Appellant never actually alleges that its use of a Namecoin name allows it to control or transfer the 2014 Namecoin NFT; there would have been no reason for Appellant to forge McCoy's metadata into a new NFT if it *could* control and transfer the 2014 Namecoin NFT. (*See* JA-184-85 (explaining that encrypted private keys are needed "to transfer namecoins"); JA-394 (District Court's observation of same, critical allegation failure by Appellant).)[7]

---

[7] The District Court explained that "[Appellant's] choice of terminology — 'Namecoin-*Quantum*' and 'Ethereum-*Quantum*' — supports its view that there are [multiple] NFTs called *Quantum* and that it has ownership rights to the one on Namecoin [the 2021 Namecoin NFT]." (JA-391 at n.12.) Appellant's gripe that the District Court "appeared to punish" Appellant for accepting Appellant's own explanation of its case theory is illogical and offensive. (App. Br. at 29 n.4.)

## **The Allegedly "False And Misleading" Auction Marketing Statements**

Appellant alleges that "Sotheby's retained [former co-defendant nameless] … to assist Sotheby's with its [] auction," and that nameless "wrote condition reports for the works in the [] auction, including the condition report for [the Ethereum NFT]." (JA-54 at ¶¶ 63-64.) Appellant alleges that condition report "falsely states that the [2014 Namecoin NFT] 'was removed from the system after not being renewed, and was effectively burned from the chain.'" (JA-54 at ¶ 65.) Appellant alleges that is false because "[a] Namecoin blockchain record cannot be 'removed,' and the blockchain record for the [2014 Namecoin NFT] has not been 'removed' or 'burned.'" (JA-55 at ¶ 68.)

Appellant further alleges that, following nameless's issuance of its independent condition report, Sotheby's later posted a video on its website "promoting and marketing the … auction," in which "McCoy states that he originally minted [the 2014 Namecoin NFT] on the Namecoin blockchain and that he 'moved the original on chain data from a burned Namecoin token into a modern industry standard ERC-721 token [*i.e.*, the Ethereum NFT], while preserving all of the original on chain information.'" (JA-55 at ¶ 66.) Because McCoy used one of the same terms as nameless used in its condition report (*i.e.*, "burned"), Appellant alleges that "McCoy's statement is also false." (JA-55 at ¶ 67.)

21

Appellant alleges that it "made repeated attempts to alert McCoy … that the [2014 Namecoin NFT] had not been 'burned' or 'removed' from the Namecoin blockchain," and to request that those allegedly false statements be "retract[ed]" or that "public corrective statements" be issued.  (JA-55-58 at ¶¶ 71-87.)  Appellant then alleges that on May 6, 2022, "nameless retracted its condition report" that had referred to the 2014 Namecoin NFT as having been "removed" and "burned."  (JA-58 at ¶ 88.)  Appellant also alleges that nameless publicized its retraction of those statements.  (*Id.*)  Coincident thereto, Appellant dismissed its claims against nameless (as an obvious *quid pro quo*).  (JA-43; JA-69.)[8]

**Appellant Pleads No Special Damages**

 Appellant vaguely alleges that "the value [of the 2021 Namecoin NFT] is being significantly diminished by the false and misleading statements made by McCoy and Sotheby's" in the course of promoting Sotheby's auction of the Ethereum NFT.  (JA-60 at ¶ 98.)  Appellant alleges that it "has incurred damages to repair the reputation to [the 2021 Namecoin NFT] as a result of McCoy and Sotheby's false and misleading statements."  (*Id.* at ¶ 99.)  Specifically, Appellant

---

[8] nameless retracted its condition report based solely on the pendency of this litigation, stating that it had "'no opinion about the merits of [Appellant's] allegations'" in this case.  (JA-58 at ¶ 88.)  That statement of non-opinion by nameless makes clear that its condition report retraction was not merits-based, but was simply a bargain struck by nameless to quickly and easily get out of this case.

alleges that it "expended $5,311.49 seeking to have McCoy and Sotheby's issue public statements correcting their false and misleading claims." (JA-61 at ¶ 100.)

Appellant does not allege that it lost any specific sales opportunities, or that it has ever tried to sell the 2021 Namecoin NFT, or that the 2021 Namecoin NFT has ever held *any* specific value.

## Procedural History

Appellant filed its initial Complaint on February 1, 2022. (JA-13.) McCoy filed a pre-motion to dismiss letter with the Court on April 1, 2022. (JA-37-39.) In response, Appellant elected to file an Amended Complaint, which dismissed two of the initially named defendants (nameless and the buyer of *Quantum* and the Ethereum NFT). (JA-36; JA-40-43.) The parties also consented to transfer the case from U.S. District Judge Lorna Schofield to U.S. Magistrate Judge James Cott for all purposes. (JA-41.)

McCoy and Sotheby's both moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On March 17, 2023, the District Court granted the motions in a 43-page decision (the "Decision"). (JA-370-412.)

## SUMMARY OF THE ARGUMENT

The District Court's Decision dismissing Appellant's claims is detailed, thoughtful, and correct. There is nothing "biased" about it. Appellant is simply unhappy that what it apparently viewed as clever, the District Court rightly saw as

nothing more than an exploitative gambit to appropriate McCoy's property and Appellees' rightful profit. The Decision should be affirmed.

Appellant is the owner of its own, distinctly minted 2021 Namecoin NFT. That is all. Appellant's copying of McCoy's 2014 Namecoin NFT content did not make Appellant the owner of the 2014 Namecoin NFT; it made Appellant a forger. Nor did Appellant's forging of the 2014 Namecoin NFT content make Appellant the owner of the *Quantum* artwork, which is distinct property that Appellant admits it had *no role* in creating, and which Appellant admits it paid *nothing* to McCoy to purportedly acquire.

Applying basic principles of property law, the District Court correctly found that Appellant did not plausibly plead any proprietary interest in the Ethereum NFT that was the subject of Appellees' sale. As Appellant admits, the Ethereum NFT and the 2021 Namecoin NFT "are different NFTs." As Appellant also admits, "no two NFTs are the same."

Furthermore, as Appellant previously admitted, and contrary to Appellant's new case theory advanced on this appeal, the *Quantum* artwork and the various NFTs that indelibly record the provenance of that artwork are not the same thing. Appellant does not plead otherwise.

The District Court's dismissal of this case for lack of justiciability (standing and ripeness), therefore, was entirely appropriate. Appellant's case is illusory.

The District Court's alternative dismissal under Fed. R. Civ. P. 12(b)(6) was also proper. Applying basic rules of commercial law, the District Court correctly found that Appellant has not stated, and cannot state, any viable claims where its property rights in the 2021 Namecoin NFT were not impacted by Appellees' sale of *Quantum* and the Ethereum NFT, or by Appellees' truthful marketing of that sale.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332(a). Appellant alleges itself to be a Canadian corporation with its principal place of business in Ontario, Canada. (JA-47 at ¶ 20.) Appellee McCoy is an individual and a citizen of New York. (*Id.* at ¶ 21.) Appellee Sotheby's is a New York corporation with a principal place of business in New York, New York. (*Id.* at ¶ 22.) Appellant sought damages in excess of $75,000. (JA-67 at ¶ 158.)

The District Court nonetheless found that it lacked subject matter jurisdiction under Article III of the U.S. Constitution. (JA-390-96.)

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is from a final judgment that disposed of all of Appellant's claims. (JA-413.)

Because Appellant failed to comply with the requirements of Fed. R. App. P. 28(a), as described above, (Note 1, *supra*), Appellees respectfully submit that this appeal should be dismissed. *See* Fed. R. App. P. 3(a)(2).

<u>**STATEMENT OF THE STANDARDS OF REVIEW**</u>

This Court reviews *de novo* the District Court's dismissal of Appellant's claims under Fed. R. Civ. P. 12(b)(1). *E.g.*, *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015).

This Court reviews *de novo* the District Court's dismissals of Appellant's claims under Fed. R. Civ. P. 12(b)(6). *E.g.*, *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014).

<u>**ARGUMENT**</u>

## I. THE DISTRICT COURT CORRECTLY DISMISSED APPELLANT'S CLAIMS FOR LACK OF JUSTICIABILITY

Appellant's sole challenge to the District Court's dismissal of its claims for lack of justiciability is based upon its contention that the District Court should have credited as true its purported allegation that it holds "'a proprietary interest in *Quantum* itself'." (App. Br. at 32 (quoting JA-393).) Appellant's argument is misguided for several reasons.

### A. Appellant Did Not Allege A Proprietary Interest In The *Quantum* Digital Artwork Itself

In now arguing that it alleged "a proprietary interest in *Quantum* itself," Appellant conspicuously does <u>not</u> cite its own pleading. (*Id.*) That is because Appellant made no such allegation. Rather, Appellant quotes a line from the

26

Decision, which itself cites McCoy's motion to dismiss brief. (JA-393.) Deconstruction of these papers reveals that Appellant's argument is sleight-of-hand.

As the Decision states, Appellant alleged "a proprietary interest in '[t]he blockchain record for Namecoin-*Quantum*,' …." (*Id.* (quoting JA-55 at ¶ 69 ("The blockchain record for the Namecoin-*Quantum* remains active and under the control of Free Holdings.")).) Appellant alleged ownership of what the District Court termed the -709a Record Page and its own 2021 Namecoin NFT. (JA-394.) Appellant did not, anywhere, allege ownership of *Quantum* itself. (*Id.*) To the contrary, Appellant affirmatively alleged that it "is the rightful owner of the still-extant Namecoin-*Quantum* NFT." (JA-61 at ¶ 102 (underscoring supplied).) Further reiterating the distinction, Appellant alleged that the link to *Quantum* attached to the Ethereum NFT that Appellees sold was "an authorized print of the Namecoin-*Quantum* token." (JA-57 at ¶ 79.) Appellant did not seek a declaration of ownership of *Quantum* itself.

Appellant now directs the Court to a line in the Decision referring to a "proprietary interest in *Quantum* itself." (App. Br. at 32 (quoting JA-393).) That line expressly refers to McCoy's initial motion to dismiss brief, in which McCoy argued that Appellant's alleged ownership of the 2021 Namecoin NFT did not confer ownership of the 2014 Namecoin NFT. (JA-157-60.) Because of the District Court's choice to define both the 2014 Namecoin NFT and the 2021 Namecoin NFT

27

as "Namecoin-*Quantum*," as Appellant had suggested, the District Court generalized McCoy's argument as concerning "*Quantum*," without specifying that McCoy's argument concerned the *NFTs* that record ownership of the separate *Quantum* artwork.  (JA-391 at n.12, JA-393.)

This point is reconfirmed on the next page of the Decision, which also quotes McCoy's brief and states:  "As McCoy points out, [Appellant] 'never alleges that it can or could control' *Quantum*."  (JA-394 (quoting JA-158).)  What McCoy wrote on page five of that brief was:  "Critically, Plaintiff never alleges that it can or could control *the 2014 [Namecoin] NFT*."  (JA-158 (emphasis supplied).)

Elsewhere in the Decision, the District Court referred to *Quantum* — meaning the actual moving digital artwork — as being viewable at a mccoyspace.com ".gif" file.  (JA-375.)  Appellant now conflates those different references in the Decision to *Quantum* and argues that, when the District Court cited McCoy's motion to dismiss brief concerning the distinction between NFT ownership rights, the District Court supposedly "meant the GIF file" of *Quantum*.  (App. Br. at 32.)  Appellant then pretends as if the District Court "meant" to refer to the *Quantum* artwork because, supposedly, Appellant had "alleged *precisely* 'a proprietary interest in *Quantum* itself,' …."  (*Id.*)  This is more sleight-of-hand.

Contrary to what Appellant now asserts the District Court "meant," the District Court made clear that its "analysis beg[an]" with Appellant's "allegations,"

28

which "rely on [its alleged] proprietary interest in *Quantum qua* name -709a," meaning *Quantum* as the -709a Record Page, not *Quantum* as the .gif file. (JA-393.) Appellant nowhere alleges a proprietary interest in "*Quantum* itself," which is why the District Court never analyzed such a theory, and why Appellant does not cite its own pleading but rather cites "§ II.A" of its appeal brief to manufacture the idea that it alleged ownership of "'*Quantum* itself.'" (App. Br. at 23-26.) Notwithstanding such smoke-and-mirrors, Appellant only alleged, and sought a declaration of title to, the "Namecoin-*Quantum*" NFT, meaning the 2014 Namecoin NFT, not *Quantum* itself.

Appellant's accusation that the District Court was "biased" for not addressing allegations it did not make is not a genuine appellate argument. (App. Br. at 29 n.4.) Nor should Appellant be permitted to raise a new case theory for the first time on this appeal. *See, e.g.*, *United States v. Wasylyshyn*, 979 F.3d 165, 172-73 (2d Cir. 2020) ("We do not reach this argument, however, because [appellant] did not raise it in the District Court. As a general rule, we will not consider arguments first raised on appeal to this court … 'The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, waiver will bar raising the issue on appeal.'") (citations and internal quotation omitted).

Likewise, Appellant's request to further amend its pleading to raise a new case theory should be denied.  (App. Br. at 45.)   Appellant misleadingly suggests it requested such leave from the District Court and that "[t]he District Court did not explain its rationale in denying amendment, …."  (*Id.*)  *Appellant never asked the District Court for leave to further amend*, nor did Appellant explain what a further amendment might look like.  (*See generally* JA-221-271.)   Appellant offers no explanation here, either.  (App. Br. at 45-46.)  *See, e.g.*, *Roth*, 756 F.3d at 183 ("'When a plaintiff has not moved for leave to amend in the district court, we are ordinarily disinclined to exercise our discretion to grant his belated request on appeal.'") (quotation omitted).[9]

### B.   The District Court Correctly Found That Appellant Lacks Any Proprietary Interest Sufficient To Confer Standing And Ripeness

Appellant does not take issue with the District Court's discussion of Article III standing and ripeness law, or contend that the District Court analyzed the wrong law.  (*See* JA-391-93 (citations omitted).)  *See, e.g.*, *Lujan v. Defenders of Wildlife*,

---

[9] The District Court noted that, had it dismissed this case "solely on subject matter jurisdiction grounds, the dismissal would be 'without prejudice' as a matter of law." (JA-397 at n.13 (citing *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021)).)  That would not have been to permit an amendment, however (which, once again, Appellant did not request).  "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly Article III deprives federal courts of the power to dismiss [the] case with prejudice." *Green*, 16 F.4th at 1074 (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)).

504 U.S. 555, 560-61 (1992) (explaining that, to establish standing, a plaintiff must viably allege that it suffered an actual or imminent injury-in-fact to a "legally protected interest" that is concrete and particularized); *Cortlandt*, 790 F.3d at 420 (explaining that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.") (citation and internal quotations omitted); *Fitzgerald v. Thompson*, 353 F. App'x 532, 534 (2d Cir. 2009) (affirming dismissal for lack of standing because appellants failed to plead injury-in-fact where their "complaint failed to allege a property interest" in the subject matter).

### 1. The District Court Correctly <u>Found That Appellant Lacks Standing</u>

The District Court found that Appellant "provide[d] an adequate factual basis to support a plausible proprietary interest in -709a — that is, *assertions of title displayed on the -709a Record Page* and by Twitter user @EarlyNFT." (JA-394 (emphasis supplied).) But the District Court also found that Appellant did "not articulate[] any facts to support its claim to ownership of [the 2014 Namecoin NFT] vis-à-vis its claim to -709a." (*Id.*) In making that finding, the Court endorsed McCoy's point that Appellant "'never alleges that it can or could control'" the 2014 Namecoin NFT. (*Id.*)

Appellant self-evidently minted its own NFT, and forged McCoy's content from his 2014 Namecoin NFT, because Appellant does *not* own and control the 2014 Namecoin NFT. The District Court appropriately found, based upon Appellant's own fact allegations, that the 2021 Namecoin NFT, the 2014 Namecoin NFT, and the Ethereum NFT are all "different NFTs." (JA-393; JA-45 at ¶ 7 ("Although both NFTs refer to the same visual image, the Ethereum-*Quantum* and the Namecoin-*Quantum* are different NFTs."); JA-48 at ¶ 30 ("NFTs are non-fungible, which means that no two NFTs are the same."); JA-16 at ¶ 15 ("A blockchain is a decentralized digital public ledger maintained on computer systems and consisting of sequential records called 'blocks.'… NFTs are non-fungible, which means that each NFT is unique.").)

The District Court further found that Appellant's only alleged support that it owns the 2014 Namecoin NFT is its statement in the 2021 Namecoin NFT (copied verbatim from McCoy) that "'[t]itle transfers to whoever controls this blockchain entry,'" and the fact that Appellant, upon its *ipse dixit*, "assert[ed] title" thereto. (JA-393-94.) Nevertheless, the District Court found that Appellant's alleged proprietary interest in the -709a Record Page that identifies "assertions of title" provides no plausible basis to infer actual "control" or ownership of the 2014 Namecoin NFT. (JA-394.) That finding was correct. *See also* Ownership, *Black's Law Dictionary* (10th ed. 2014) (defining "ownership" as "[t]he bundle of rights allowing one to use,

32

manage, and enjoy property"); *cf. Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 390-91 (D. Conn. 2018) (dismissing conversion claim because "[t]he Complaint does not provide a plausible basis to conclude [that defendant] ever had control or exercised *its* right of ownership over [plaintiff's property]. For example, there is no indication [that defendant] … controlled the [property].").

Appellant does not argue that any of these findings by the District Court is incorrect. Most significantly, Appellant does not contend that the District Court erred in finding that Appellant's property interest in the 2021 Namecoin NFT is distinct from McCoy's property interest in the Ethereum NFT, which is what he and Sotheby's sold. (JA-398.) In the words of the District Court: "[Appellant's] position is that it claims title to an 'indelible' record of *Quantum* on Namecoin, … but [] it does not claim title to the record of *Quantum* maintained on Ethereum." (JA-404.)

Instead, Appellant faults the District Court for not crediting as true Appellant's allegation that it holds "'a proprietary interest in *Quantum* itself.'" (App. Br. at 32.) As discussed above, however, Appellant made no such allegation. Nor was the District Court required to interpolate such an allegation into Appellant's pleading or "draw inferences from the complaint favorable to [Appellant]" to decide if Appellant had standing. *Doe v. Quest Diagnostics, Inc.*, No. 15 CIV. 8992 (LGS),

33

2017 WL 1102663, at *2 (S.D.N.Y. Mar. 23, 2017) (explaining that a plaintiff "cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.") (citation omitted).

Even if Appellant had conclusorily alleged that its interest in the -709a Record Page and minting of the 2021 Namecoin NFT somehow conveyed title to the *Quantum* artwork itself, the District Court would not have been required to credit that conclusion as true — particularly where Appellant alleged no facts supporting its creation or purchase of *Quantum*, and where Appellant elsewhere alleged a specific distinction between NFTs and the external "content linked to NFTs." (JA-48 at ¶ 32; *accord* JA-48 at ¶ 29 ("NFTs are tokens *that authenticate digital content* via blockchain technology.") (emphasis supplied); JA-49 at ¶ 35 (alleging that Namecoin records can "be used like domain names, or to contain other values, such as *references to external images* that allow them to act as NFTs.") (emphasis supplied); JA-17 at ¶ 20 (initially alleging that the 2014 Namecoin NFT "was the first known blockchain record to explicitly link to an *external work of art* (namely the quantum .gif file hosted on mccoyspace.com)") (emphasis supplied).)

### 2. The District Court Correctly Found That Appellant's Claims Are Unripe

The District Court also found that Appellant failed to allege a concrete or imminent injury-in-fact, finding that Appellant "has not pleaded *any* actual or

34

imminent harm to its alleged proprietary interest." (JA-394-396 (citations omitted).) In making this finding, the District Court specifically analyzed "three theories" of harm that Appellant alleged. (JA-394-95.) Appellant does not contest *any* of these analyses by the District Court, and thus offers no basis for reversal. (App. Br. at 32.)

Instead, Appellant disingenuously contends that it alleged a "classic injury-in-fact providing standing" because, purportedly, it "alleged that McCoy and Sotheby's *sold something it owns*," meaning "'*Quantum* itself.'" (*Id.*) Once again, Appellant made no such allegation and argued no such theory to the District Court.

In arguing to the District Court that its claims were ripe, Appellant never contended that it suffered harm based upon the sale of the *Quantum* artwork itself; Appellant contended harm to the value of *its 2021 Namecoin NFT*. (JA-256-58.) Appellant specifically argued that "[Appellees'] conduct has forced [Appellant] to expend time and money in order to repair title to his Namecoin-*Quantum*" NFT. (JA-258.) Appellant further argued that "[Appellees] have precluded [Appellant] from including Namecoin-*Quantum* [*i.e.*, the 2021 Namecoin NFT] in the Sotheby's sale of Ethereum-*Quantum* [*i.e.*, the Ethereum NFT], …." (*Id.*) Appellant likewise argued that "[a]ny prospective purchaser of Namecoin-*Quantum* would now have valid reason to doubt the value of the Namecoin-*Quantum* [NFT]." (*Id.*) None of these arguments focused on the theory that Appellant suffered harm because the

*Quantum* artwork itself was sold without Appellant's consent. That was never Appellant's theory.

As the District Court correctly found, Appellant alleged no concrete or imminent harm to the sale value of its 2021 Namecoin NFT. (JA-395.) Appellant did not allege that it even tried to market the 2021 Namecoin NFT. (*Id.*) Therefore, the District Court correctly found that Appellant's claims lacked ripeness. (JA-396.) The District Court's dismissal under Fed. R. Civ. P. 12(b)(1) should be affirmed.

## II. THE DISTRICT COURT ALTERNATIVELY CORRECTLY DISMISSED APPELLANT'S CLAIMS UNDER RULE 12(B)(6)

Appellant does not contend that it was error for the District Court to have alternatively analyzed Appellant's claims on the merits "for completeness' sake." (JA-396-97 (citing *Desir v. Florida Cap. Bank*, *N.A.*, 377 F. Supp. 3d 168, 174 (E.D.N.Y. 2019).) *See also Genesee Brewing Co. v. Vill. of Sodus Point*, N.Y., 733 F.2d 258, 259 (2d Cir. 1984) (affirming dismissal under Rule 12(b)(1) and under Rule 12(b)(6) as a "secondary reason to dismiss").

### A. The District Court Correctly Dismissed Appellant's Claim For Unjust Enrichment

To state a viable claim for unjust enrichment, a "'plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be

recovered.'" (JA-398 (quoting *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)).)

Appellant alleged that Appellees "derived profits from the false and misleading statements concerning the promotion, marketing, advertisement, and sale of the [Ethereum NFT]," and that Appellees "continue to enrich themselves through future projects by falsely promoting and marketing their successful sale of the [Ethereum NFT]." (JA-62 at ¶¶ 111-112.) Appellant alleged that such enrichment was at its "expense," for which Appellant sought disgorgement of the auction sale proceeds of the Ethereum NFT and *Quantum*: $1.472 million. (*Id.* at ¶¶ 113, 116.) The District Court correctly dismissed this claim for three reasons.

### 1. Appellant Did Not Viably Or Plausibly Allege That Appellees Sold Property At Appellant's Expense

As discussed above, the District Court correctly found — supported by Appellant's own allegations — that the Ethereum NFT and the 2021 Namecoin NFT are "different NFTs." (JA-393.) Because of that admitted fact, the District Court also correctly found that Appellant "does not allege that it has any proprietary interest in the NFT that McCoy and Sotheby's sold … Moreover, [Appellant] has made no specific allegations that [Appellees'] sale of an NFT (it does not even claim to own) was at its expense." (JA-398.)

37

Appellant does not contend that the District Court's reasoning regarding Appellees' sale of the Ethereum NFT was incorrect. (App. Br. at 33.) Appellant's unjust enrichment claim is based solely upon Appellees' sale of the Ethereum NFT. (JA-62 at ¶¶ 111-114.) The District Court's dismissal of Appellant's unjust enrichment claim should be affirmed for this reason alone.

Appellant instead tries to save its unjust enrichment claim by faulting the District Court for not crediting as true that Appellant purportedly "*did* allege a proprietary interest in '*Quantum* itself,' the GIF file that [Appellees] *also* sold." (App. Br. at 33.) As discussed above, however, Appellant made no such allegation.

Moreover, the District Court would not have been required to credit such an allegation as true, even if Appellant had made it. The District Court need not credit conclusory allegations that are implausible. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

As Appellant previously acknowledged, the *Quantum* .gif file is not the same as the 2014 Namecoin NFT. (JA-17 at ¶ 20; *accord* JA-48 at ¶ 32.) Even if it were, Appellant does not allege (and, given McCoy's retention of the encrypted private key, cannot allege) that it controls the 2014 Namecoin NFT. (JA-394.) *See also* Fed. R. Civ. P. 11(b)(3).

Appellant's allegation that it controls the 2021 Namecoin NFT — a different NFT that Appellant independently minted and used as a vehicle to accomplish nothing more than forgery of McCoy's 2014 Namecoin NFT — is a *non sequitur* response to that fundamental point. Appellant's new assertion on this appeal that it owns *Quantum*, and that *Quantum* was sold by Appellees at Appellant's "expense," is not only inappropriate attempted sandbagging of both the District Court and Appellees, it is also implausible as a matter of law.

### 2. Appellant Did Not Allege A Close Connection Between Itself And Appellees

"A viable unjust enrichment claim also requires some sort of connection between the plaintiff and defendants that would make the enrichment unjust." (JA-398 (citing *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)).) *Accord Georgia Malone*, 19 N.Y.3d at 517-18 ("[T]he relationship between [the parties] is too attenuated because they simply had no dealings with each other.").

The District Court correctly found that "[n]othing in the amended complaint can be construed as describing a sufficiently close relationship between the parties to support an unjust enrichment claim" because Appellant alleged nothing more than an unsolicited outreach by "@EarlyNFT" to McCoy over Twitter, and a single phone call and unanswered email to Sotheby's. (JA-398-99.) As the District Court correctly explained: "The pleadings provide no information as to why McCoy

should have even known who @EarlyNFT was, much less that it was [Appellant]….

A single phone call followed by an unanswered email may safely be characterized

as an 'arm's length business interaction' and anonymous unanswered replies on one

social media network constitutes no interaction at all."  (JA-399.)

    Appellant does not contest any of these findings by the District Court.  (App.

Br. at 33.)  Instead, Appellant posits that McCoy "made [an] offer" to Appellant

*seven years earlier* by including certain value field metadata in his 2014 Namecoin

NFT, which data Appellant "copied verbatim" in its 2021 Namecoin NFT.  (*Id.*)

Appellant's assertion is nonsensical.

    As the District Court found, Appellant made no allegations supporting an

inference that McCoy knew who Appellant was, let alone that McCoy made an

"offer" to Appellant in particular, let alone that McCoy intended that so-called "offer"

to last for seven years, let alone that McCoy intended to allow "acceptance" of his

purported "offer" by an act of forgery.  Nor does Appellant allege any facts to

support an inference that McCoy made an "offer" at all which he invited Appellant

to "accept," particularly where Appellant does not allege that McCoy ever responded

to Appellant's unsolicited outreaches, or that Appellant ever provided any

consideration to McCoy.

    Appellant would have this Court make new and troubling law that anytime a

defendant makes a public statement, and a stranger to the defendant purports

unilaterally to rely on that statement at any time in the future upon nothing more than the defendant's say-so, without any communications or consideration being exchanged between the parties, then the defendant may be "sufficiently connected" and liable to that stranger for unjust enrichment. That is not, and should not be, the law. *See Mandarin Trading*, 16 N.Y.3d at 182-83 ("[U]nder the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement … [T]he mere existence of a letter that happens to find a path to a prospective purchaser does not render this transaction one of equitable injustice requiring a remedy to balance a wrong.").

### 3. Appellant Did Not Allege Facts Supporting An Offense To "Equity And Good Conscience"

The District Court found that Appellant "has demonstrated nothing more than an attempt to exploit open questions of ownership in the still-developing NFT field to lay claim to the profits of a legitimate artist and creator. It does not allege that it took any part in the creation of *Quantum* or the blockchains used to record it." (JA-399.) That finding was not "*sua sponte*" or "a pure statement of the District Court's own opinion" that "gives a further appearance of bias against [Appellant]," as Appellant asserts. (App. Br. at 34 & n.5.) That was a finding that the District Court was called upon to make, was entitled to make, and correctly made in determining

41

that Appellant had not plausibly pleaded facts to support a viable unjust enrichment

claim against a legitimate artist and creator like McCoy, and a legitimate art and

collectibles dealer like Sotheby's. Anonymous forgers like Appellant are not

deserving of equitable relief from the courts.

### B. The District Court Correctly Dismissed Appellant's Claims For Slander Of Title And Commercial Disparagement

"To state a claim for slander of title, the claimant must plausibly allege that

the offending party 'maliciously' used false statements to cast doubt upon another's

property interest, causing 'special damages,' typically in the form of a lost sale

resulting from the cloud on the claimant's title." *Wei Su & Hai Wang v. Sotheby's,*

*Inc.*, No. 17-CV-4577 (VEC), 2019 WL 4917609, at *3 (S.D.N.Y. Oct. 4, 2019)

(citing *Rosenbaum v. City of N.Y.*, 8 N.Y.3d 1, 12 (2006)).

"Trade libel, also known as product disparagement, is the 'disparagement of

a business's goods or services' …." *North Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457

F. Supp. 3d 207, 231 (E.D.N.Y. 2020) (citation omitted). Required elements of the

claim include a false statement of fact (not opinion), malice and special damages.

*Id.*; *John Grace & Co. v. Todd Assocs., Inc.*, 188 A.D.2d 585, 586 (2d Dep't 1992);

*Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 812 (Sup. Ct. N.Y. Cnty.

2005).

The District Court correctly dismissed Appellant's slander of title and commercial disparagement claims for three reasons.

## 1. Appellant Did Not Viably Allege Falsity

Appellant alleged that, following nameless's issuance of its condition report that referred to the 2014 Namecoin NFT as having been "removed" and "burned," McCoy made statements that also referred to the 2014 Namecoin NFT as having been "burned" (McCoy did not say that the NFT was "removed"; he said he had "moved the original on-chain data from a burned Namecoin token into a modern, industry standard, ERC 721 [Ethereum] token, while preserving all of the original on-chain information."). (JA-54-57 at ¶¶ 64-82; JA-403.) Appellant alleged that Appellees acted unlawfully because McCoy's statements gave an "overall impression" that the 2014 Namecoin NFT "did not exist." (*Id.*)

The District Court found that Appellant's allegations failed to state a viable claim because McCoy's echoing of nameless's description of the 2014 Namecoin NFT being "burned" is, at worst according to Appellant's own allegations and submitted materials, a term with a meaning that is a "topic[] of debate." (JA-401.) Appellant admitted that the NFT McCoy created on Namecoin "expire[d]," (JA-45 at ¶ 3, JA-50 at ¶ 40), and also admitted that "defining the legal import of control of digital assets on the Namecoin blockchain [] is the subject of differing opinions." (JA-254). *Accord* Maghan McDowell, "Why brands are burning NFTs," *Vogue*

43

*Business*, Feb. 8, 2022 (https://www.voguebusiness.com/technology/why-brands-are-burning-nfts) (cited at JA-177) ("[T]here is no established, formal definition of a 'burn' for NFTs, and 'people may refer to a range of scenarios as a burn.'").

Because "expressions of pure opinion … are not actionable" as slander or commercial disparagement, the District Court correctly found that McCoy's use of the term, "burned" was not an actionable basis to support Appellant's slander of title claim. (JA-401 (citing *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014) (citing *Torain v. Liu*, 279 F. App'x 46, 46 (2d Cir. 2008)).) *See also Dillon v. City of N.Y.*, 261 A.D.2d 34, 38 (1st Dep't 1999) (explaining that loose, figurative or hyperbolic statements that are susceptible to ambiguous meanings, even if deprecating to the plaintiff, are not actionable); *Penn Warranty*, 810 N.Y.S.2d at 815 (finding words too ambiguous to qualify as statement of fact where, "in the complaint the plaintiff had to frame or augment the allegedly defamatory words with its own words in order to even allege that the language was defamatory").

The District Court's finding was correct: the notion that a NFT has been "preserved," "burned," "effectively burned," or otherwise "removed" is loose, imprecise language that lacks a defined meaning that is readily understood, and thus, as a matter of law, is protected opinion. Appellant protests that this was error because it "dodges the Court's responsibility to find the facts beneath litigants'

competing claims." (App. Br. at 28.) But it is well-established that "the determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *E.g.*, *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986).

Furthermore, the context overwhelmingly showed that these words were statements of opinion. Indeed, the condition report accompanying the auction listing specifically stated that the "nameless™ Condition Reports *are statements of opinion only and not representation of fact*." (JA-109 (emphasis supplied).)

Relying on materials that were either expressly incorporated by reference or integral to Appellant's pleading, the District Court also found, correctly, that Appellant misattributed statements to Appellees that they never actually made in marketing the sale of the Ethereum NFT. (JA-402.) The District Court explained that Appellant's allegations "never quote [Appellees] — or anyone else — stating that 'Ethereum-*Quantum*' [the Ethereum NFT] was the first NFT created…. 'Ethereum-*Quantum*' and 'Namecoin-*Quantum*' are terms [Appellant] employs in its pleadings, and there is no evidence to suggest that [Appellees] or anyone else ever used them in any public statements or challenged materials." (*Id.*)

The District Court additionally found that Appellant offered no authority for its assertion that an allegation of a false "overall impression" is actionable; but, in

any event, the District Court found that Appellees "did not convey an 'overall impression … that Namecoin-*Quantum* did not exist,' because they actually explained *Quantum*'s blockchain history multiple times in [the marketing material]." (JA-403.)

Appellant faults the District Court for its so-called "selective quotation of [Appellant's] complaint, as well as its dismissal of factual questions as matters of opinion." (App. Br. at 35.) The District Court was perfectly entitled to base its Rule 12(b)(6) decision on Appellant's own allegations as well as materials integral to Appellant's pleading — that is the point of Rule 12(b)(6). *E.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 214 (2d Cir. 2020).

Moreover, Appellant's siding with one side of a "topic of debate" does not make its belief a 'fact'; its belief is an opinion about what should be accepted as a fact. Expressed differences in that opinion are not "false." *See, e.g.*, *Mr. Chow*, 759 F.2d at 224; *Steinhilber*, 68 N.Y.2d at 290.

### 2.  **Appellant Did Not Viably Allege Malice**

Related to its finding of no falsity, the District Court correctly found that Appellant "has not pleaded any facts supporting even an inference of malice on the part of Sotheby's or McCoy" (nowhere in its pleading did Appellant expressly allege that Appellees acted with "malice"). (JA-405.) Appellant contests that finding with new, vacant rhetoric about McCoy speaking in "Orwellian" terms and purportedly

46

"scrambl[ing]" to mint the Ethereum NFT. (App. Br. at 36.) Such makeweight is immaterial.

As the District Court correctly found, Appellees disclosed the existence of the 2014 Namecoin NFT and their views about its preservation on the Ethereum NFT. (JA-403-04.) Relying on materials submitted by Appellant, and on Appellant's concession of what those materials mean, the District Court correctly found that "reasonable minds believe [Appellees'] understanding of *Quantum's* ownership." (JA-405.) "This falls well short of malice." (*Id.* (citation omitted).) *See also Chamila, LLC v. Pandora Jewelry, LLC,* No. 04-CV-6017 (KMK), 2007 WL 2781246, at *11-12 (S.D.N.Y. Sept. 24, 2007) (dispute as to meaning of law or merits of claim is not evidence of reckless disregard for the "truth"); *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 756 (3d Dep't 2005) ("We find no evidence of the malicious intent necessary to support a cause of action for slander of title and, given our conclusion that defendant had probable cause to claim title to the disputed property, these public assertions cannot be said to have been made 'with a reckless disregard for their truth or falsity.'") (citations omitted).

### 3. Appellant Did Not Allege Special Damages

The District Court found that Appellant alleged no special damages. (JA-405-06.) Appellant did "not state a specific lost value, an estimated worth of its claimed NFT, or any specific lost sales opportunities" for its 2021 Namecoin NFT. (JA-406.)

*See also Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) ("The rules surrounding the pleading and proof of special damages are stringent and well-articulated[: they] are limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses."); *accord Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642-43 (2d Cir. 2015).

Appellant responds with another new argument raised for the first time on appeal. To the District Court, Appellant contended that it incurred special damages in the amount of $5,311.49, which Appellant alleged it spent "to have McCoy and Sotheby's issue public statements correcting their false and misleading claims." (JA-61 at ¶ 100, JA-63 at ¶¶ 125-126.) As the District Court correctly found, such costs allegedly incurred to redress the alleged wrong are not special damages. (JA-406.) *See, e.g.*, *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 444 (1956); *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989).

Appellant does not contest that finding by the District Court. Instead, Appellant asks this Court to assume that it lost the opportunity to sell its 2021 Namecoin NFT to the buyer of the Ethereum NFT and *Quantum* for the same $1.472 million. (App. Br. at 37.) Appellant also re-asserts its newly raised theory that it "suffered a loss to its 'property interest in Quantum itself.'" (*Id.* (quoting JA-393).)

Even if Appellant had pleaded such facts, they are implausible. Appellant provides no support for its inference that any buyer would have paid $1.472 million for Appellant's anonymous forgery of McCoy's original and creative work, which Appellant never attempted to market, explain or sell. *Cf. De Sole v. Knoedler Gallery LLC*, 139 F. Supp. 3d 618, 644 (S.D.N.Y. 2015) (finding that sale of forged artwork caused damages to buyer).

### C. The District Court Correctly Dismissed Appellant's Claim Under N.Y. GBL § 349

A claim under New York General Business Law § 349 "requires a showing that '(1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury.'" (JA-407 (citations omitted).) Furthermore, the scope of § 349 is "limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety." (*Id.* (citations omitted))

The District Court found that Appellant alleged a non-actionable, "'single-shot transaction' involving complex arrangements, knowledgeable and experienced parties and large sums of money" that "truly affected" only the parties directly involved, not "the public at large," and that "the 'gravamen' of [Appellant's] amended complaint is plainly the alleged harm to its business, not to the public."

(JA-407-08.) *Genesco Ent., Div. of Lymutt Indus. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (citations omitted); *accord 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 548 (S.D.N.Y. 2014); *North Am. Olive Oil*, 457 F. Supp. 3d at 229; *RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015); *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 409 (S.D.N.Y. 2009); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003); *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 294 (1999); *Teller v. Bill Hayes, Ltd.*, 213 D.2d 141, 148-49 (2d Dep't 1995).

Appellant primarily responds that it did allege consumer-oriented conduct under *Koch v. Greenberg*, 626 F. App'x 335 (2d Cir. 2015). (App. Br. at 42-44.) Appellant is mistaken.

In *Koch*, the plaintiff had purchased 2,600 bottles of wine, a number of which were counterfeit, from a collection of 17,000 bottles that had been consigned from "one of the largest wine collections in the United States." *Koch v. Greenberg*, No. 07 CIV.9600 (BSJ)(DF), 2008 WL 4778813 at *7, n.13 (S.D.N.Y. Oct. 31, 2008); *Koch v. Greenberg*, 14 F. Supp. 3d 247, 253 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015). Liability under GBL § 349 existed because of the large number of counterfeit bottles offered for sale and the clear possibility that other victims did,

or would, fall prey to the scheme. *Koch*, 626 F. App'x at 340-41. As explained by the district court in that case at the Rule 12 stage:

> Given the large number of bottles [the defendant] consigned for the October 2005 auction, and the fact that Plaintiff's purchase of a small percentage of those bottles contained counterfeits, it seems possible that other consumers at the auction were impacted by [the defendant's] alleged misconduct. Thus, assuming the allegations of the complaint to be true, it is reasonable to conclude that the conduct complained of affected other similarly situated consumers – other purchasers at the October 2005 auction – and, therefore, had a broad impact on consumers at large.

*Koch*, , 2008 WL 4778813 at *7; *Koch*, 14 F. Supp. 3d at 261.

In contrast to *Koch*, Appellant alleged one, consummated sale to a single buyer (who has never complained). As the District Court correctly found, Appellant alleged a "single-shot transaction" that is outside the purview of § 349. (JA-407-08.) *See also 4 K & D*, 2 F. Supp. 3d at 549 ("In this case, auctions of luxury real properties, which were valued at millions of dollars, involved complex arrangements between sophisticated parties and with tens of thousands of dollars in marketing costs alone … which are wholly unlike the unsophisticated, day-to-day consumer transactions in the sales of consumer products and services. Therefore, because of the large amounts of money involved in these complex transactions, and because these transactions provided services 'tailored' to meet the sellers' individualized requirements, … these contracts cannot be deemed as 'consumer-oriented.'") (citation omitted); *Green v. Cap. One, N.A*, 557 F. Supp. 3d 441, 454-55 (S.D.N.Y.

51

2021) (granting Rule 12(b)(6) dismissal of § 349 claim by bank account holder against bank where disputed transactions were direct transfers between private parties, and allegations of consumer-oriented conduct were "conclusory").

Appellant's further assertion that Appellees "used the sale of *Quantum*, a popular and headline grabbing transaction, to burnish their reputations in the NFT space and develop their platforms for future consumer sales of NFTs," is both speculative and irrelevant. (App. Br. at 43.) Appellant does not allege that Appellees are trying to re-sell the Ethereum NFT and *Quantum*, and Appellant cites no law that it may bootstrap its § 349 claim in this case concerning a single, closed sale, on *different*, speculated NFT activities by Appellees in the future.

### D. The District Court Correctly Dismissed Appellant's False Advertising Claim Under Section 43(a) Of The Lanham Act

"To bring a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must allege that (1) the statement it challenges is either 'literally false' or 'likely to confuse or deceive consumers;' (2) the 'defendant misrepresented an inherent quality or characteristic of a good or service;' (3) 'the defendant placed the false or misleading statement in interstate commerce;' and (4) 'the plaintiff was injured as a result of the defendant's misrepresentation, either by a diversion of business or a loss of goodwill associated with the plaintiff's goods or services.'" (JA-409 (citations omitted).)

Appellant alleged that Appellees "issued statements about the status of both the [2014 Namecoin NFT] and the [Ethereum NFT] that were false or misleading representations, descriptions, or designations of origin" because they "falsely stated that the [2014 Namecoin NFT] was 'burned' or otherwise 'removed' from the Namecoin blockchain." (JA-66 at ¶¶ 150-151.) Appellant additionally alleged that "McCoy and Sotheby's further falsely stated that the [Ethereum NFT] they sold at auction was the first NFT ever created." (*Id.* at ¶ 152.)

The District Court correctly dismissed Appellant's false advertising claim for two reasons.

### 1.    <u>Appellant Failed To Allege Falsity</u>

As discussed above in connection with Appellant's dismissed slander of title and commercial disparagement claims, the District Court correctly found that none of the statements made by Appellees was "literally false." (JA-409.)

Appellant all-but concedes this finding — arguing only vaguely, and without support, that the District Court "should have allowed [Appellant's] claims to proceed to discovery and the merits." (App. Br. at 38.) Appellant is incorrect. The District Court was entitled to find, based upon the materials submitted by the parties that were integral to Appellant's pleading, (a) that Appellees' use of the term, "burned" was not literally false as a matter of law, and (b) that Appellees did not actually describe the Ethereum NFT as the "first NFT ever created."

Appellant argues that it adequately pleaded "implied falsity" because "McCoy and Sotheby's did everything possible to leave the 'impression on the listener or viewer' considering bidding in the 'Natively Digital' auction that Sotheby's and McCoy were selling 'the first NFT ever minted,' when they were not." (*Id.* at 39 (citation omitted).) Appellant further asserts that Appellees "actually" deceived the buyer of the Ethereum NFT and *Quantum*. (*Id.* at 40.)

Notwithstanding Appellant's unsupported rhetoric, Appellant failed to allege any facts to support an inference that Appellees made impliedly false statements that confused "a not insubstantial number of consumers". *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992) (citation omitted). "At the pleading stage," to demonstrate implied falsity, "the plaintiff must allege that consumers or retailers were misled or confused by the challenged advertisement and offer facts to support that claim," such as through a survey. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018); *accord Johnson & Johnson*, 960 F.2d 294, 298 (2d Cir. 1992); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018).

Appellant's last-second assertion in its briefing that the single buyer of the Ethereum NFT and *Quantum* was confused is insufficient.  No law holds that implied falsity may be inferred because of the alleged confusion of a single customer.[10]

### 2. Appellant Failed To Allege Diversion Of Business Or Loss Of Goodwill

The District Court also found that Appellant failed to allege harm "in its own proprietary interest" because Appellant "does not allege to have had any business or goodwill in *Quantum* [meaning the Ethereum NFT] in the first place."  (JA-410.)

Appellant's response that the District Court's finding was "based on its misunderstanding" of what Appellant alleged is insincere.  (App. Br. at 41.)  As explained above, Appellant did not allege that it is the owner of "*Quantum* itself."  Appellant distorts the District Court's use of Appellant's own defined terms in the Decision to manufacture an appearance of having made such an allegation.

Appellant's further assertion that it is "in direct competition" with McCoy, and that they are "'[i]n a two-player market,'" is baseless.  (*Id.* at 41 n.6.)  Appellant

---

[10] Before the District Court, Appellant cited *Mobius Mgmt. Sys. Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1021-22 (S.D.N.Y. 1994), for the proposition that implied falsity may be inferred because of the alleged confusion of a single buyer.  That case, however, concerned a claim of *literal falsity*, not implied falsity.  The court in *Mobius* made clear that, when implied falsity is at issue, "deception is usually shown with consumer surveys and other such evidence," but "when the misrepresentation is 'literally or explicitly false,' … 'the court may grant relief without reference to the advertisement's impact on the buying public.'"  *Id.*

is the alleged owner of the 2021 Namecoin NFT, which it admits is a "different NFT" than the Ethereum NFT that McCoy already sold through Sotheby's. (JA-45 at ¶ 7.) McCoy has no interest in the 2021 Namecoin NFT (which is a mere forgery).

### E. The District Court Correctly Denied Appellant's Request For A Declaratory Judgment

Finally, the District Court correctly denied Appellant's request for declarations that it "is the rightful owner of the [2014 Namecoin NFT]," that "the [2014 Namecoin NFT] has not been 'burned,'" and that "statements issued by McCoy and Sotheby's in connection with their sale of the [Ethereum NFT] were false and misleading." (JA-410-11; JA-61-62 at ¶ 109.)

The District Court found that Appellant's "pleadings fail to give rise to an 'actual controversy' because it has not alleged any concrete or particularized injury stemming from [Appellees'] representations." (JA-411 (citation omitted).) Appellant's speculation about diminished future value to its 2021 Namecoin NFT, were Appellant ever to market it for sale, does not state an "actual controversy" as a matter of law. (*Id.*) *See also AARP v. 200 Kelsey Assocs., LLC*, No. 06-CV-81 (SCR), 2009 WL 47499, at *4-5 (S.D.N.Y. Jan. 8, 2009) (explaining that "contingent future events that may not occur as anticipated, or indeed may not occur at all," do not establish an "actual controversy").

Appellant's only response is that it pleaded an "actual controversy" for "the same reasons that [it] has standing". (App. Br. at 44-45.) As discussed above, however, that argument by Appellant is misguided.

Accordingly, the District Court's alternative dismissal of Appellant's claims pursuant to Fed. R. Civ. P. 12(b)(6) should be affirmed.

## **CONCLUSION**

By offering a late-breaking, entirely new case theory on this appeal, Appellant all-but concedes the case theory it actually pleaded and argued to the District Court was properly dismissed. Appellant rarely joins issue with the findings and rulings the District Court made, insisting instead that the District Court somehow overlooked a different argument that Appellant supposedly made. But Appellant made no such argument. The Decision is correct and should be affirmed.

If this Court is inclined to entertain Appellant's improperly raised new theory, and to overlook Appellant's other rule violations under Fed. R. App. P. 28(a), then the Decision still should be affirmed. Appellant's new notion that it appropriated the *Quantum* artwork when it minted its 2021 Namecoin NFT using similar name data that McCoy had used seven years earlier is implausible — indeed, it is frivolous.

For the foregoing reasons, Appellees respectfully request: (i) that this appeal be dismissed pursuant to Fed. R. App. P. 3(a)(2) for Appellant's non-compliance with Fed. R. App. P. 28(a); (ii) that the District Court's Decision dismissing

Appellant's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) be affirmed; (iii) that the District Court's Decision alternatively dismissing each of Appellant's claims pursuant to Fed. R. Civ. P. 12(b)(6) be affirmed; and (iv) that this Court award Appellees such other and further relief as it deems just and proper.

Dated:    New York, New York
           August 29, 2023

**PRYOR CASHMAN LLP**

By: _____

William L. Charron
Robert J. deBrauwere
Nicholas Saady
wcharron@pryorcashman.com
rdebrauwere@pryorcashman.com
nsaady@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant-Appellee Kevin McCoy*

-and-

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/Theresa M. House

Theresa M. House
Marcus A. Asner

58

Theresa.House@arnoldporter.com
Marcus.Asner@arnoldporter.com
250 West 55th Street
New York, New York 10019-9710
(212) 836-8094

Evan M. Rothstein (Second Circuit
admission application forthcoming)
Evan.Rothstein@arnoldporter.com
1144 Fifteenth Street, Suite 3100
Denver CO 80202-2848
(312) 583-2360

*Attorneys for Defendant-Appellee*
*Sotheby's Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,033 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

By: _____

William L. Charron