23-644
*Free Holdings, Inc. v. McCoy*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# **SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-four.

PRESENT:
> MICHAEL H. PARK,
> EUNICE C. LEE,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

**Free Holdings, Inc.,**

*Plaintiff-Appellant*,

v. 23-644

**Kevin McCoy and Sotheby's Inc.,**

*Defendants-Appellees.*\*

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | MOISH ELI PELTZ, Falcon Rappaport & Berkman LLP, Rockville Centre, NY. |
| FOR DEFENDANTS-APPELLEES: | WILLIAM L. CHARRON, (Robert J. deBrauwere and Nicholas Saady, *on the brief*), Pryor Cashman LLP, New York, NY, *for Kevin McCoy*. |

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

                                              THERESA M. HOUSE, (Marcus A. Asner, *on the brief*), Arnold & Porter Kaye Scholer LLP, New York, NY, *for Sotheby's Inc.*

Appeal from a judgment of the United States District Court for the Southern District of New York (Cott, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and **REMANDED** for further proceedings consistent with this order.

In 2021, Appellees auctioned a non-fungible token ("NFT") recorded on the Ethereum blockchain of a digital artwork titled *Quantum*, for nearly $1.5 million. Appellant Free Holdings sued. It argued that Appellees had marketed their Ethereum NFT as the "first" NFT ever created, but that Free Holdings actually owned the first NFT—a record on the Namecoin blockchain—and had been injured by the sale.

The district court ruled that Free Holdings lacked standing to pursue its claims because it failed to allege an interest in the Ethereum NFT that Appellees actually sold at auction. Specifically, the district court determined that Appellees' sale of the Ethereum NFT does not affect Free Holdings' ownership rights or ability to sell its own "claimed Namecoin NFT."[1] Special App'x at 26. Thus, Free Holdings suffered no injury in fact because it has no interest in what Appellees sold. The district court also concluded in the alternative that Free Holdings had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). Free Holdings now appeals. We

---

[1] At points, the district court also states that Free Holdings has failed to allege an interest in "*Quantum*." Special App'x at 24-25. This language in the district court's order has no bearing on our analysis—we review de novo—but to the extent the district court concluded that Free Holdings failed to allege ownership of the digital artwork referenced by the NFTs at issue here, we note that such a conclusion is inapposite to determining whether Free Holdings has standing to sue over ownership of the first NFT.

1    assume the parties' familiarity with the underlying facts, the procedural history of the case, and
2    the issues on appeal.

3    When considering a dismissal under Rule 12(b)(1), "we review the [district] court's factual
4    findings for clear error and its legal conclusions *de novo*." *Cortlandt St. Recovery Corp. v. Hellas*
5    *Telecomms., S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

6    We begin with standing. A litigant invoking federal jurisdiction must demonstrate
7    "[s]tanding to sue," a requirement "rooted in the traditional understanding" of what it means to
8    assert a "case or controversy" under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 578
9    U.S. 330, 338 (2016). "[T]he 'irreducible constitutional minimum' of standing consists of three
10   elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the
11   challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial
12   decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in
13   fact is "an invasion of a legally protected which is (a) concrete and particularized, and (b) actual
14   or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). Moreover,
15   "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a
16   proprietary interest in, the claim." *Cortlandt St. Recovery Corp.*, 790 F.3d at 420 (quoting *W.R.*
17   *Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)).

18   Free Holdings advances a different theory of standing in this Court than it did in the district
19   court. Free Holdings now argues, for the first time on appeal, that it alleged ownership of the
20   artwork *Quantum*, that Appellees sold *Quantum*, and that it thus suffered an injury in fact.

We decline to consider this argument. Free Holdings' new theory of standing represents a fundamental shift in its theory of the case.[2] Even assuming that Free Holdings' complaint could be understood to allege an ownership interest in *Quantum*, none of the causes of action in the complaint is premised on such an alleged ownership. We decline to recharacterize the pleadings to allege harm related to Free Holdings' ownership of *Quantum* or to consider its new theory of standing on that basis.[3]

We do consider, however, Free Holdings' arguments for standing as they were presented to the district court. There, Free Holdings argued that: (1) Appellees falsely marketed the Ethereum NFT as the "first" NFT and profited from its sale, but Free Holdings actually owned the first NFT and thus should have received those profits; (2) the sale damaged the value of Free Holdings' Namecoin NFT; and (3) Free Holdings had to spend $5,311.49 trying to get Appellees to correct their public statements.

On de novo review, we ultimately agree with the district court's ruling that none of these theories plausibly states an injury in fact. First, even if Appellees wrongly profited from selling

---

[2] In its amended complaint, for example, Free Holdings requested a judgment declaring that it was "the rightful owner of [the Namecoin NFT]," not that it was the owner of *Quantum*. Am. Compl. ¶ 109. Similarly, it alleged that the sale of [the Ethereum NFT] constituted unjust enrichment based on Appellees' false statements about it being the "first" NFT, not that Appellees had sold Free Holdings' property. *Id.* ¶¶ 111-14. The same is true of Free Holdings' claims for slander of title, deceptive trade practices, commercial disparagement, and Lanham Act false description—it alleged harm to the value of its NFT, saying nothing about title to *Quantum*. *Id.* ¶¶ 119-25, 129-35, 139, 141-46, 155-58.

[3] A challenge to a plaintiff's standing may be raised at any time and is not subject to the usual rules of waiver and forfeiture. *See United Food & Com. Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 303 (2d Cir. 1994). We have occasionally taken the same approach to new arguments in favor of standing too. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (citing *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)). But we have done so only when "the underlying claims and theories of the action itself remain unchanged from those alleged in the complaint." *Thompson*, 15 F.3d at 248-49.

the Ethereum NFT, it does not necessarily follow that Free Holdings was harmed. As the district court pointed out, Free Holdings failed to allege that *its* claimed Namecoin NFT would have sold in Sotheby's sale—or even that Free Holdings had made any actual, concrete attempts to sell the NFT. Indeed, even if Free Holdings attempted to sell its Namecoin NFT when Appellees were auctioning the Ethereum NFT, consumers might well still have chosen to purchase the latter. Thus, Free Holdings' claimed injury from not being able to participate in the auction is too speculative to establish standing. *See Lujan*, 504 U.S. at 560.

Second, Free Holdings' claim that Appellees' Ethereum NFT sale damaged the value of its Namecoin NFT fails for similar reasons. Even assuming that Free Holdings' NFT was in fact the first-ever NFT, absent allegations that Free Holdings actually attempted to sell that NFT, or any alleged mechanism by which Appellees' sale would have damaged the value of Free Holdings' NFT, any relationship between Appellees' sale and damage to Free Holdings' NFT is too conjectural to support standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013) (requiring that injury be "certainly impending"). As in the example above, it is possible that if Free Holdings put their Namecoin NFT up for sale now and advertised their theory of provenance, their Namecoin NFT might sell for large sums if consumers believe Free Holdings' theory of ownership.

Finally, the district court correctly concluded that funds spent in an attempt to get Appellees to "correct the record" cannot provide an independent basis for standing. *See Clapper*, 568 U.S. at 416 ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

5

The district court thus correctly dismissed Free Holdings' claims for lack of standing as to its ownership rights over its Namecoin NFT. It erred, however, in dismissing with prejudice. *See* Special App'x at 28 n.13. Dismissals for lack of standing must be entered without prejudice. *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021). This is true even when, if there had been jurisdiction, a plaintiff's complaint would have been dismissed under Rule 12(b)(6) for failure to state a claim. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (explaining that, without subject matter jurisdiction, the court lacks the power to dismiss with prejudice).

On remand, the district court is directed to dismiss Free Holdings' amended complaint without prejudice. We do not reach Free Holdings' arguments that the district court erred in its analysis under Rule 12(b)(6).

* * *

We have considered all of Free Holdings' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED**. The district court is directed to dismiss Free Holdings' amended complaint without prejudice.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court